U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED **55.**

## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF VERMONT

APR 7  4 50 PM '03

CLERK

BY _____
DEPUTY CLERK

| | |
|---|---|
| Leon A. Brown, | : |
|     Plaintiff, | : |
| | : |
|     v. | :   File No. 1:01-CV-318 |
| | : |
| City of South Burlington | : |
| and | : |
| Charles Hafter, individually | : |
| and as City Manager, City of | : |
| South Burlington | : |
| and | : |
| Michael O'Neil, individually | : |
| and as Chief Engineer, City | : |
| South Burlington, | : |
|     Defendants. | : |

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>
### (Papers 23, 25, 27 & 29)

Plaintiff Leon A. Brown filed this action against the

City of South Burlington, Charles Hafter in both his

individual capacity and as the City Manager of South

Burlington, and Michael O'Neil in both his individual

capacity and as the Chief Engineer of the City of South

Burlington Fire Department.  Brown asserts claims under

31 U.S.C. § 3730(h), alleging wrongful discharge under

the whistleblower portion of the False Claims Act

("FCA"), and 42 U.S.C. § 1983, alleging wrongful

discharge in retaliation for his exercise of his First Amendment right to freedom of speech. He also joins a state law claim alleging wrongful termination in violation of Vermont public policy. The case is now before this Court on Defendants' several Motions for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment.

For the following reasons, I recommend that Defendants' Motion for Summary Judgment on the Merits For All Defendants as to all Claims (Paper 23) be GRANTED in Part and DENIED in part; Defendants' Motion for Summary Judgment Based on Official Immunity for Individual Defendants as to All Claims (Paper 25) be GRANTED; Defendants' Motion for Summary Judgment as to the Release of All Claims (Paper 27) be DENIED; and Plaintiff's Motion for Partial Summary Judgment (Paper 29) be DENIED.

## Background

Unless noted, the following facts are undisputed. In January 1999, Plaintiff sent an anonymous letter to the

2

South Burlington City Council, the South Burlington City

Manager, the Federal Bureau of Investigations ("FBI"),

and the Federal Emergency Management Agency ("FEMA"),

and copied the letter to several local media outlets.[1]

In the letter, Plaintiff accused the South Burlington

Fire Chief, Defendant O'Neil, of submitting false claims

to FEMA in order to obtain money.[2]  (Paper 24 at 2,

---

[1]Plaintiff is unsure whether he actually sent the letter to the media
outlets, but the letter states that it has been copied to the WCAX-TV
Channel 3 News Room, the WPTZ-TV Channel 5 News Room, and the Burlington
Free Press.  (Paper 34 at 2-3.)

[2]The letter read:
                    Remember the 1998 Ice Storm!
         The South Burlington Fire Chief, Mike O'Neil using invoices
         from the South Burlington Firefighter's Association for it's
         own power.

         Obtaining FEMA currency for personal use, by submitting
         claims for meals which never conspired, 299 meals in fact.

         Not even one meal from any such service was ever supported or
         existed.

         This S.B. Fire Chief has hurt this department in such a short
         amount of time.  Why do you think so many us on-call
         firefighter's have moved on.  Look at the interior qualified
         list when the Chief started and look at the list today.

         Cc. South Burlington City Council:  William Cimonetti, James
                                     C. Condos
         South Burlington City Manager:  Chuck Hafter
         WCAX-TV ch3: News Room
         WPTZ-TV ch5: News Room
         Federal Bureau of Investigation
         Federal Emergency Management Agency

(Paper 28, Exhibit A (errors in the original).)

3

Paper 34 at 2, Paper 28 Exhibit A.)  As a result of the letter, FEMA conducted some level of investigation into the allegations and concluded that the documentation of the meal expenses was in order.[3]  (Paper 24 at 3-4. Paper 34 at 6-7.)  Plaintiff was later discovered to be the author of the anonymous letter, and was given the choice of resigning or being fired.  (Paper 24 at 5-6, Paper 34 at 15-16.)  He chose to resign.  In conjunction with his resignation, he signed a form releasing the Defendants from all further claims he might have against them in exchange for a payment of $7964.70.  (Paper 24 at 6, Paper 28 Exhibit F, Paper 36 at 7.)

Three months after he resigned, Plaintiff reported the allegations about the meal reimbursements to FEMA's Inspector General's office.  (Paper 24 at 6.)  FEMA initiated an investigation and determined that the meal

---

[3]The level of investigation actually conducted is in dispute.  Defendants allege that the City of South Burlington initiated its own investigation and contacted FEMA at their Boston office so that FEMA could conduct an audit.  (Paper 24 at 2-4.) . Plaintiff argues that there is no evidence that South Burlington ever conducted its own investigation.  Instead, Plaintiff argues that Defendant Hafter asked Defendant O'Neil to conduct the audit, and that FEMA officials never spoke to anyone except Defendant O'Neil.  (Paper 34 at 2-7.)

4

reimbursement claim was not valid.  (Id.)  The United

States and the City entered a Stipulation to Entry of

Judgment in December 2000.  (Paper 24, Exhibit M.)

Under the Stipulation, the City paid the United States

$2500 without admitting wrongdoing and without a finding

that Defendant O'Neil had used any of the money for

personal use.  (Id.; Paper 24 at 6.)

On January 10, 2001, Plaintiff contacted Defendants

seeking reimbursement for the earned sick time he had

accumulated through March 1999.  (Paper 24, Exhibit G3.)

Plaintiff filed the instant lawsuit on October 15, 2001.

(Paper 1.)

## Standard of Review

Summary judgment should be granted when "there is no

genuine issue as to any material fact and . . . the

moving party is entitled to a judgment as a matter of

law," Fed. R. Civ. P. 56(c), or "'[w]here the record

taken as a whole could not lead a rational trier of fact

to find for the non-moving party.'"  Konikoff v.

Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir.

5

2000) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith</u> <u>Radio Corp</u>., 475 U.S. 574, 587 (1986)). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" <u>O'Hara v. Weeks Marine, Inc.</u>, 294 F.3d 54, 61 (2d Cir. 2002) (quoting <u>Anderson v.</u> <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id</u>.

"When determining whether there is a genuine issue of fact to be tried, the court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." <u>Winter v.</u> <u>United States</u>, 196 F.3d 339, 346 (2d Cir. 1999)(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)). As to any claim or essential element for which the non-moving party bears the burden of proof at trial, the non-moving party must make a showing sufficient to establish the existence of that claim or element. <u>Tops</u> <u>Mkts., Inc. v. Quality Mkts., Inc.</u>, 142 F.3d 90, 95 (2d

AO 72A
(Rev.8/82)

Cir. 1998)(citing <u>Celotex</u>, 477 U.S. at 324; <u>DiCola v.</u>
<u>Swissre Holding, Inc.</u>, 996 F.2d 30, 32 (2d Cir. 1993)).
"Credibility assessments, choices between conflicting
versions of the events, and the weighing of evidence are
matters for the jury, not for the court on a motion for
summary judgment." <u>Fischl v. Armitage</u>, 128 F.3d 50, 55
(2d Cir. 1997). Summary judgment is mandated, however,
"after adequate time for discovery and upon motion,
against a party who fails to make a showing sufficient
to establish the existence of an element essential to
that party's case, and on which that party will bear the
burden of proof at trial." <u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 322 (1986).

## Discussion

A.    <u>Release of all Claims</u>

Defendants argue that Plaintiff is barred from
asserting any of these claims, because he signed a
general release relinquishing all claims against the
Defendants in conjunction with his resignation. (Paper
28, Exhibit F.) Plaintiff does not dispute the fact

7

that he signed the release, but argues that the release
is void because it was based on fraud.[4]

"A valid release is a bar to recovery on the claim
released, so long as it is not rescinded by an offer to
return the consideration insofar as it lies within the
power of the person who has executed the release."
Economou v. Economou, 136 Vt. 611, 619 (1979).  "Courts
will not enforce a release that is the product of
fraud."  Allen v. Westpoint-Pepperell, Inc., 945 F.2d
40, 44 (2d Cir. 1991)).

"Fraud in the inducement is 'an intentional
misrepresentation of fact affecting the essences of the

---

[4]Plaintiff also argues, with respect to the FCA claim, that the release
is invalid because the government did not approve it.  In support of this
contention, he cites 31 U.S.C. 3730(b), United States ex rel. Green v.
Northrop Corp., 59 F.3d 953(9th Cir. 1995) and United States ex rel.
DeCarlo v. Kiewit/AFC Enters., 937 F. Supp. 1039 (S.D.N.Y. 1996).  These
authorities are all inapposite, however, as they speak to the dismissal
of a qui tam action brought under the FCA.  The FCA itself does not
require government participation or approval of a settlement of a private
action brought under 31 U.S.C. 3730(h), and the court in Northrup
explicitly declined to consider the validity of a pre-filing release of
an action under 3730(h).  Northrup, 59 F.3d at 43 n.12.  The only cases
that this Court has found that deal with the release of a claim under
3730(h) held that the government's permission was not required, so long
as the release or settlement was not being used to disguise funds
actually owed the government, because the cause of action was the
property of the individual employee and not of the government.  United
States ex rel. Smith v. First Am. Health Care, 1999 U.S. Dist. LEXIS 6181
at *19 n.4 (6th Cir. 1999); United States ex rel. Summit v. Michael Baker
Corp., 40 F. Supp. 2d 772, 776 (E.D.Va. 1999).

8

transaction, false when made and known to be false by

the maker, not open to the defrauded party's knowledge,

and relied upon by the defrauded party to its damage.'"

Turkovich v. APC Capital Partners, LLC, 2002 U.S. Dist.

LEXIS 25876 at *17 (D.Vt. 2002)(quoting Ben & Jerry's

Homemade, Inc., v. La Soul, Inc., 983 F. Supp. 504, 506

(D. Vt. 1997)).  Any reliance on a misrepresentation

must be justifiable.  Sugarline Assocs. v. Alpen

Assocs., 155 Vt. 437, 445 (1990).

     In this case, Plaintiff alleges that the Defendants

induced him to sign the release by telling him that all

of the claims in his letter were false, and supported

their assertions with false, fabricated evidence.

Specifically, Plaintiff cites a memo by Frederick

Costello, in which he states that he had investigated

the allegations of a false claim and determined that

everything was in order. (See Paper 15, Exhibit 4.)

Plaintiff argues that, although this document was not

fraudulent, it was based on the fraudulent

representations of the Defendants in their efforts at a

9

cover-up.  (Paper 36 at 8 and Exhibit F, Paper 15,

Exhibit 11.)  Plaintiff cites the subsequent

investigation by FEMA and the settlement between FEMA

and the Defendants as proof that there was a fraudulent

cover-up.

Defendants argue that Plaintiff has not submitted any

proof that these documents were fraudulent rather than

mistaken.  Although that may be true, questions of the

Defendants' intent are questions of fact and should be

left for the jury.  "The validity of a release is a

peculiarly fact-sensitive inquiry."  <u>Livingston v.</u>

<u>Adirondack Beverage Co.</u>, 141 F.3d 434, 437-38 (2d Cir.

1998).  As such, I recommend that Defendants' motion for

summary judgment as to the release of all claims be

denied.[5]

---

[5]In addition, there seems to be some dispute as to whether Plaintiff
consulted a lawyer before signing the release.  A release of federal
claims is governed by federal law, which requires that the release of
claims was knowing and voluntary, and "[t]he 'totality of the
circumstances' test is used to determine whether a release of Federal
claims is knowing and voluntary."  <u>Depalma v. Realty IQ Corp.</u>, 2002 U.S.
Dist. LEXIS 4911, at * 8 (S.D.N.Y. 2002)(citations omitted).  This
inquiry requires the examination of several factors, including the
plaintiff's education and business experience, whether the plaintiff had
a role in deciding the terms of the agreement, and whether the plaintiff
consulted with an attorney.  <u>Id.</u> (citations omitted).

AO 72A
(Rev.8/82)

B.    **Claims against Defendants Hafter and O'Neil in**

       **Their Individual Capacity**

Defendants also seek summary judgment as to all

claims against Defendants Hafter and O'Neil in their

individual capacities.  They argue that the state law

claim may only be brought against the municipality under

Vermont law, citing Vt. Stat. Ann. tit. 24, § 901.

(Paper 25.)  In addition, they argue that Plaintiff's

FCA retaliatory discharge claim must be dismissed

against them because "individual supervisors are not

'employers' under the statute."  (Id.) Finally, they

submit that Defendants Hafter and O'Neil are entitled to

qualified immunity as to Plaintiff's First Amendment

claim.  (Id.)  Plaintiff opposes this motion, arguing

that the Defendants can not establish qualified immunity

as to the First Amendment claim or the state law claim,

and that the FCA is comprehensive enough to include

supervisors in the definition of employers.

       1.   State Law Claim

Under the Vermont statute cited by Defendants,

11

> Where an action is given to any appointed or
> elected municipal officer or town school
> district officer, the action shall be brought
> in the name of the town in which the officer
> serves and in the case of a town school
> district officer in the name of the town school
> district.  If the action is given against such
> officers, it shall be brought against such town
> or town school district, as the case may be.

Vt. Stat. Ann. tit. 24, § 901.  This statute applies to
any state law action brought against municipal officers,
and therefore the state law claim against Defendants
O'Neil and Hafter should be dismissed.[6]  See Gallipo v.
City of Rutland, 173 Vt. 223, 238-239 (2001).

### 2.  Retaliatory Discharge Under the FCA

Under the FCA, an employee who is fired by his
employer in retaliation for protected activity under the
act may bring an action against that employer.  31
U.S.C. 3730(h).  The term employer is not defined in the
Act, but "Section 3730(h) plainly mentions only the
'employer' as incurring liability, and the word
'employer' does not normally apply to a supervisor in

---

[6]As an aside, Plaintiff did not respond directly to this argument,
arguing instead that the Defendants were not entitled to qualified
immunity for the state law claim. (Paper 37 at 11-12.)

12

his individual capacity." <u>Yesudian ex rel. U.S. v.
Howard University</u>, 270 F.3d 969, 972 (D.C. Cir.
2001)(retaliatory discharge under the FCA).  Defendants
O'Neil and Hafter are not employers under the FCA, and
therefore the FCA claim against them should be
dismissed.

      3.  <u>Qualified Immunity</u>

   "The defense of qualified immunity shields government
agents 'from liability for civil damages insofar as
their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable
person would have known.'" <u>McEvoy v. Spencer</u>, 124 F.3d
92, 97 (2d Cir. 1997)(quoting <u>Harlow v. Fitzgerald</u>, 457
U.S. 800, 818 (1982)).  "A qualified immunity defense is
established if (a) the defendant's action did not
violate clearly established law, or (b) it was
objectively reasonable for the defendant to believe that
his action did not violate such law." <u>Tierney v.
Davidson</u>, 133 F.3d 189, 196 (2d Cir. 1998) (quoting
<u>Salim v. Proulx</u>, 93 F.3d 86, 89 (2d Cir. 1996).

13

A public employee may be discharged because of speech if his First Amendment interest is outweighed by "'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" <u>Waters v. Churchill</u>, 511 U.S. 661, 695-695 (1994) (plurality opinion)(quoting <u>Connick v. Myers</u>, 461 U.S. 138, 142 (1983)(quoting <u>Pickering</u>, 391 U.S. at 568)). In considering whether the employer's interest in efficiency outweighs the employee's interest in speech, the court "must consider whether the statement sought to be protected 'impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships . . . or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'" <u>Knight v. Conn. Dep't of Pub. Health</u>, 275 F.3d 156, 164 (2d. Cir. 2001) (quoting <u>Lewis v. Cowen</u>, 165 F.3d 154, 165 (2d Cir. 1999)(citation omitted)).

Plaintiff argues that any fear of disruption was a "mere claim of disruption created by the Defendant's own

14

dissemination of the letter and disparaging of the true account" (Paper 37 at 7). Defendants, however, have submitted uncontradicted evidence of their fears of disruption and the investigation of possible disruption at the time of the incident, including statements by Plaintiff's supervisor that he would have a hard time working with Plaintiff as a result of this incident and statements from other members of the department that the method Plaintiff used to lodge his complaint would make it difficult for them to trust him. (<u>See</u> Paper 24, Exhibit E, F.) Defendants have shown that they acted in good faith in discharging Plaintiff based on a reasonable fear of disruption, and that it was objectively reasonable for them to believe that they could lawfully fire Plaintiff based on the potential disruptive effects of his letter. Defendants are therefore entitled to qualified immunity on Plaintiff's § 1983 claim.[7]

---

[7]Plaintiff argues that <u>Sheppard v. Beerman</u>, 94 F.3d 823, 828 (2d Cir. 1996), "stands for precisely the issue before this Court: where there is retaliatory against a whistleblower exercising First Amendment rights, as there certainly is here, there is no qualified immunity." (Paper 37 at

AO 72A
(Rev.8/82)

C.    **Defendants' Motion for Summary Judgment on the Merits as to All Claims**

1.  Plaintiff's First Amendment Claim

Defendants first seek summary judgment on Plaintiff's claim, pursuant to 42 U.S.C. § 1983, that they violated his First Amendment right to freedom of speech by firing him.  Defendants argue that Plaintiff's letter as a whole was not related to matters of public concern and was personally motivated.  They also argue that letter was defamatory, and therefore unprotected.  Finally, they argue that the City's interest in maintaining the efficient operation of the fire department was great and the fear that the letter would disrupt the department far outweighed any first amendment interest Plaintiff did have.

Plaintiff counters that Defendants have failed to

---

7.)  In that case, however, qualified immunity was deemed inappropriate at the judgment on the pleadings stage, because the plaintiff had made allegations of unconstitutional motive that the court felt might be borne out during discovery.  Sheppard, 94 F.3d at 828-829.  After discovery, the district court granted summary judgment to the defendant, finding that there was no evidence to support a finding of unconstitutional motive and that the defendant was entitled to qualified immunity. Sheppard v. Beerman, 190 F. Supp. 2d 361 (S.D.N.Y. 2002), aff'd, 317 F.3d 351 (2d Cir. 2003).

16

show that they reasonably believed that the letter would interfere with or disrupt the efficient operation of the fire department, and that any disruptive effect came from Defendants' decision to publicize the letter within the department.

For Plaintiff to prevail on his First Amendment claim, he "must prove by a preponderance of the evidence that (1) the expression at issue was constitutionally protected, (2) the alleged retaliatory action adversely affected his constitutionally protected expression, and (3) a causal relationship existed between the constitutionally protected expression and the retaliatory action." Camacho v. Brandon, No. 01-9117, slip op. at 5993 (2d Cir. Jan. 10, 2003)(Miner, J.)(citing Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001), overruled in part on other grounds by, Phelps v. Kapnolas, 308 F.3d 180, 187 n.6 (2d Cir. 2002)).  The first part of this inquiry, whether the speech is protected, is a question of law; the second and third parts are questions of fact. Czurlanis v. Albanese, 721

17

F.2d 98, 105 (3d Cir. 1983) (citing <u>Connick</u>, 461 U.S. at

150 n. 10 ("we are compelled to examine for ourselves

the statements in issue and the circumstances under

which they are made to see whether or not they . . . are

of a character which the principles of the First

Amendment, as adopted by the Due Process Clause of the

Fourteenth Amendment, protect.")).

In <u>Pickering v. the Board of Education OF Township</u>

<u>High School District 205, Will County</u>, the Supreme Court

recognized that public employers may not discharge

employees in retaliation for protected speech.  391 U.S.

563, 574 (1968).  Not all speech is protected, however.

> To be protected, the speech must be on a matter
> of public concern, and the employee's interest
> in expressing herself on this matter must not
> be outweighed by any injury the speech could
> cause to "'the interest of the State, as an
> employer, in promoting the efficiency of the
> public services it performs through its
> employees.'"

<u>Waters v. Churchill</u>, 511 U.S. 661, 695-695 (1994)

(plurality opinion)(quoting  <u>Connick v. Myers</u>, 461 U.S.

138, 142 (1983)(quoting <u>Pickering</u>, 391 U.S. at 568)).

18

The first question, then, is whether Plaintiff's speech was on a matter of public concern. A public employee's speech is on matters of public concern when the speech relates to a matter of political, social or other concern to the community. Connick, 461 U.S. at 141. "A public employee's speech on matters of purely personal interest or internal office affairs does not constitute a matter of public concern and is therefore not entitled to constitutional protection." Heil v. Santoro, 1997 U.S. Dist. LEXIS 2583 at *13 (S.D.N.Y. 1997) aff'd, 147 F.3d 103 (2d Cir. 1998).

In this case, Plaintiff's letter involved allegations of fraud on the part of the South Burlington Fire Chief, Defendant O'Neil. (Paper 23 at 2.) In addition, the letter made reference to the fact that on-call firefighters were unhappy with the performance of O'Neil and that many had "moved on" since O'Neil became chief. The statements regarding the dissatisfaction of the on-call firefighters with O'Neil are not protected, as they fall under the category of speech on purely internal

19

office affairs.  The portion of the letter relating to

suspected fraud, however, is clearly a matter of public

concern.  The public has a definite interest in ensuring

that local government agencies do not commit fraud on

the federal government.

Defendants argue that the letter is defamatory and

therefore unprotected.  Specifically, Defendants argue

that the following statements allege that O'Neil stole

money for his own personal use: "The South Burlington

Fire Chief, Mike O'Neil using invoices from the South

Burlington Firefighter's Association for its's own

power.  Obtaining FEMA currency for personal use, by

submitting claims for meals which never conspired, 299

meals in fact.  Not even one meal from any such service

was ever supported or existed."  (Paper 34 at 2 (errors

in the original).)  Construing the facts in favor of

Plaintiff, however, it is difficult to say that the

letter is per se defamatory.  Although it could be

argued that Plaintiff meant that O'Neil took the money

in question for his own personal use, it could also be

20

argued that Plaintiff's letter, though inelegant and
grammatically incorrect, simply meant that O'Neil took
the money for the use of the department.  For summary
judgment purposes, therefore, the statements about the
alleged fraud are protected speech.

Even though Plaintiff's speech was on a matter of
public interest, it might not be protected.  The second
part of the <u>Pickering</u> balancing test requires that the
court "weigh the employee's interest in speaking against
the government's interest in promoting the efficiency of
the services it performs through its employees."
<u>Sheppard v. Beerman</u>, 190 F. Supp. 2d 361, 371 (S.D.N.Y.
2002), <u>aff'd</u>, 317 F.3d 351 (2d Cir. 2003) (citations
omitted).  "Under the balancing test, the governmental
employer may defeat the claim by demonstrating that it
'reasonably believed that the speech would potentially
interfere with or disrupt the government's activities,
and can persuade the court that the potential
disruptiveness was sufficient to outweigh the First
Amendment value of that speech.'" <u>Pappas v. Giuliani</u>,

21

290 F.3d 143, 145-146 (2d Cir. 2002)(quoting <u>Heil v.</u>

<u>Santoro</u>, 147 F.3d 103, 109-110 (2d Cir. 1998)); <u>see also</u>

<u>Camacho v. Brandon</u>, No. 01-9117, slip op. at 5993 (2d

Cir. Jan. 10, 2003).  "Only if an employee can satisfy

both parts of this test, thus proving his or her speech

was protected, should the court move on to determining

whether the last two elements of a cause of action for

retaliation -- adverse action and motivation -- are

present."  <u>Sheppard</u>, 190 F. Supp. 2d at 361.

"Substantial weight is accorded the government

employer's prediction that given speech has the

potential for disruptiveness, but its prediction must be

reasonable.  Thus, an employer that has received a

report of such speech must make a reasonable

investigation before deciding to take action against the

employee."  <u>Heil</u>, 147 F.3d at 109-110 (citing <u>Waters v.</u>

<u>Churchill</u>, 511 U.S. 661, 673, 677 (1994)(plurality

opinion)).  The time, place and manner of a particular

communication, even of protected speech, may threaten

the institutional efficiency of the government employer,

22

tipping the balance required by <u>Pickering</u> in favor of the employer.  <u>See</u> <u>Janusaitis v. Middlebury Volunteer Fire Dept.</u>, 607 F.2d 17, 28-29 (2d Cir. 1979) (citing <u>Givhan v. Western Consolidated School</u>, 439 U.S. 410 (1979)).

In this case, Defendants argue that the letter publicized an internal employee grievance against the fire department, and did so in such a manner as "to create or exacerbate internal tensions between the Department's unionized and non-unionized firefighters, to undermine the Department's chain of command, and to damage relationships of trust among the Department's members."  (Paper 25 at 3.)  In support of these assertions, they cite the deposition of Ken Datillo, who testified that members of the department felt that the letter was untrustworthy because it was anonymous, that even if the allegations were true they should have been handled differently, and that members of the department did not feel they could trust the author of the letter. (Paper 24, Exhibit E.)  In addition, they cite a memo

23

issued on March 8, 1999, in which O'Neil stated that members of the volunteer and paid staff had been coming into his office to express dismay at the way Plaintiff handled the situation and that members would have a hard time trusting the person who wrote the letter. (Paper 24, Exhibit F.) O'Neil also noted that "Captain Datillo feels that if FF Brown were to remain, it could lead to a 'hostile and very uncomfortable atmosphere'" and that Plaintiff's commanding officer "stated that he would have a 'hard time working with FF Brown, and that it would be difficult to trust Brown if they had to work together.'" (<u>Id.</u>) Finally, O'Neil noted that the Assistant Chief, Bob Wheel, felt that Plaintiff should be dismissed because he "tried to throw suspicion on the call staff, to make it seem that it was a call person who wrote the letter. This aspect of the incident could have a devastating effect on this department." (<u>Id.</u>) In order to avoid the disruptive effects of the manner in which Plaintiff handled the incident, O'Neil recommended that Plaintiff be discharged. (<u>Id.</u>)

24

Plaintiff argues that the letter was not actually a dispute about internal affairs. In the last paragraph of the letter he wrote, "This S.B. Fire Chief has hurt this department in such a short amount of time. Why do you think so many us on call firefighter's have moved on. Look at the interior qualified firefighter list when the Chief started and look at the list today." (Paper 34 at 2 (errors in the original)). Plaintiff claims that this portion was entirely made up, because he was afraid that his letter would lead to retaliation. He argues that, because this portion of the letter was simply an effort to disguise his identity, it should also be protected. In addition, he argues that Defendants themselves are to blame for any strife the letter created, as they let the firefighters know about the letter in the first place. Finally, Plaintiff argues that he did not make the allegations public, even though the letter stated that it was being sent to the local media. Plaintiff argues that he does not recall actually sending the letter to the media, and even if he

AO 72A
(Rev.8/82)

did, there is no evidence that the local media contacted the department or publicized the allegations.   (Paper 34 at 2; 33 at 15-16.)

Plaintiff's arguments fail.  First, an anonymous letter publicizing internal grievances would be cause for discharge absent the protected speech.  The fact that the allegations were false only buttresses the Fire Department's case for dismissal, as such activity could reasonably lead to actual strife between volunteer and paid staff.  Plaintiff argues that the last paragraph of the letter should not be considered by this Court, as the allegations contained therein "were not real, but a feint to avoid retaliation. . . They were the wrapper for the protected speech and inseparable from it.  They were not real grievances.  Their only existence was to convey protected speech."  (Paper 33 at 12.)

In this case, Defendants could reasonably believe that an anonymous letter that contained allegations that on-call firefighters were dissatisfied with the fire chief could lead to strife within the department, even

26

if the allegations were in fact false.  The fact that
Defendants publicized the letter within the department
may have exacerbated that strife.  It was also part of a
reasonable effort to prevent strife, however.  The
letter stated that it was being sent to the local media,
and Defendants have submitted evidence that they
disseminated the letter within the department so that
members would not find out about the allegations from an
outside source.  (Paper 24, Exhibit E.)

Plaintiff's argument that the last paragraph of the
letter was merely a ruse and therefore should not be
considered in the <u>Pickering</u> balancing is misplaced.
Plaintiff's false allegations of internal grievances
were not necessary to convey the allegations of fraud.
By adding in the grievances, Plaintiff gave the
Department a reasonable fear that the letter would be
disruptive, thus giving Defendants cause for his
termination despite his First Amendment protections.[8]

---

[8]This does not mean, however, that Defendants necessarily had a
legitimate reason for discharging Plaintiff in spite of the protections
of the FCA.  The inquiry under the FCA is a separate inquiry from whether
speech is protected by the constitution.  As will be discussed, whether

27

Although fear of termination is understandable, an employee should not be reckless in protecting himself from such termination.

Finally, Plaintiff argues that Defendants can not claim the protection of the reasonable belief of disruption because the investigation into the allegations of the letter was "worse than a sham; it was another fraud based on a new false document." (Paper 33 at 12.) Plaintiff misunderstands the meaning and purpose of this requirement. In asserting a defense that an employee was discharged because of a reasonable belief of disruption, the "employer must make a reasonable investigation before deciding to take action against the employee." Heil v. Santoro, 147 F.3d 103, 109-110 (2d Cir. 1998) (citing Waters v. Churchill, 511 U.S. 661, 673, 677 (1994)(plurality opinion)). The investigation required is not an investigation into the truth of the protected speech, but rather an

---

the potential for disruption by itself would support Plaintiff's discharge under the FCA, and whether Defendants motivation for the discharge was based on the potential for disruption or any protected activity of Plaintiff are questions of fact for the jury to decide.

28

investigation into whether the speech will cause disruption. Defendants have submitted evidence that they performed such an investigation by talking to various members of the department and Plaintiff's supervising officer. (Paper 24, Exhibit E, F.) Plaintiff makes no argument and offers no evidence to rebut Defendants' evidence of investigation and potential disruption. Thus, Defendants' motion for summary judgment on the First Amendment claim should be granted.

      2.  <u>False Claims Act</u>

Defendants argue that they are entitled to summary judgment on Plaintiff's retaliatory discharge claim under the False Claims Act. They argue that Plaintiff was not fired for a protected activity, and that, even if "there was a causal relationship between the Plaintiff's termination and an action in furtherance of whistle blowing activity, the City's interest in terminating Plaintiff for his other unprotected conduct . . . justified Mr. Brown's separation from the

29

Department." (Paper 23 at 16-17.) Plaintiff counters

that permitting Defendants to prevail on this argument

"would utterly defeat the purpose of the False Claims

Act to protect such reports of official malfeasance."

(Paper 33.)

Under the False Claims Act:

> Any employee who is discharged . . . by his or
> her employer because of lawful acts done by the
> employee on behalf of the employee or others in
> furtherance of an action under this section,
> including investigation for, initiation of,
> testimony for, or assistance in an action filed
> or to be filed under this section, shall be
> entitled to all relief necessary to make the
> employee whole.

31 U.S.C. § 3730(h). "To sustain an action under §

3730(h), a plaintiff must prove (1) that he engaged in

conduct protected under the statute, (2) that defendants

were aware of his conduct, and (3) that he was

terminated in retaliation for his conduct." Moor-

Jankowski v. The Board of Trustees of New York

University, 1998 U.S. Dist. LEXIS 12305 at *32 (S.D.N.Y.

1998).

To engage in protected activity, a plaintiff need not

30

have filed a qui tam action, but "must demonstrate that
[his] investigation, inquiries, and/or testimony were
directed at exposing a fraud upon the government."
Luckey v. Baxter Healthcare Corp., 2 F. Supp. 2d 1034
(N.D. Ill. 1998). "[A]n employee engages in protected
activity where (1) the employee in good faith believes,
and (2) a reasonable employee in the same or similar
circumstances might believe, that the employer is
possibly committing fraud against the government."
Moore v. Cal. Inst. of Tech. Jet Propulsion Lab., 275
F.3d 838, 845 (9th Cir. 2002). In this case, Plaintiff
suspected that false receipts had been submitted to FEMA
and wrote a letter to the Federal Bureau of
Investigations ("FBI") and FEMA, among other recipients,
including Defendants. Writing letters to the FBI and
FEMA are actions "directed at exposing a fraud upon the
government." It is true that the letter contained false
statements regarding internal grievances, but a
reasonable jury could conclude that at least the first
portion of the letter is protected under the FCA. In

31

addition the copies to the City establish that

Defendants knew of Plaintiff's activities.

Plaintiff must also establish, by a preponderance of

the evidence, that his discharge was in retaliation for

his protected activity. He asserts that, because

Defendants have admitted that he was terminated because

of the letter, Defendants' liability has been

established. (Paper 29.) This assertion misstates the

facts and the law. Although Defendants did terminate

Plaintiff as a direct result of the letter, they did not

necessarily do so in retaliation for the protected

portion. It is Plaintiff's burden to demonstrate that

he was terminated in retaliation for his protected

activity. A reasonable jury could find that Plaintiff

was terminated, not because of any protected activity,

but because of other, legitimate reasons.

Defendants have asserted that Plaintiff's termination

was based on several factors, including the fear that

Plaintiff's false statements regarding the volunteer

staff's dissatisfaction with Chief O'Neil, would lead to

32

disruption within the department.  These statements may
have been, as Plaintiff asserts, "self-evidently an
effort to divert attention" from the true author of the
letter.  (Paper 29.)  Nevertheless, a reasonable jury
could find that the statements could create strife
within the department, and could find that the potential
for disruption that the false statements would create
was a legitimate reason for Plaintiff's discharge.
Likewise, a reasonable jury could find that Defendants'
stated reasons were merely a pretext for an illegal
discharge.

Defendants assert that they are entitled to summary
judgment on this claim as well as the § 1983 claim
because the discharge was based on the reasonable fear
of disruption.  The difference between an action for
retaliatory discharge under the FCA and an action for
wrongful discharge in violation of an employee's First
Amendment rights is the <u>Pickering</u> balancing test.
Counsel have cited no authority and this Court can find
none, that allows a defendant to avoid a claim for

33

retaliatory discharge under the FCA upon the mere showing that a report would be disruptive. A defendant may assert that the fear of disruption was a lawful, alternative reason for the discharge, but whether the discharge was in fact because of a fear of disruption or because of some protected activity of Plaintiff is a question for the finder of fact to decide.

    3. <u>Discharge in Violation of Vermont Public Policy</u>

Defendants also seek summary judgment on Plaintiff's state law claim, arguing that Vermont has no clear and compelling policy "promoting whistle blowing without employment consequence." (Paper 23.) Plaintiff counters that Vermont does have a clear and compelling interest in preventing retaliatory discharge.

"Although generally an at-will employment contract may be terminated by either party to the contract at any time, with or without cause,. . .[the Vermont Supreme Court] has recognized an exception to this general rule when the employer's actions contravene clear and

34

compelling public policy." <u>Murray v. St. Michael's</u>
<u>College</u>, 164 Vt. 205, 208-209 (1995) (recognizing a
strong public policy against discharge in retaliation
for filing a workers' compensation claim); <u>see also</u>
<u>Payne v. Rosenthal</u>, 147 VT 488 (1986)("the discharge of
an employee solely on the basis of age is a practice so
contrary to our society's concern for providing equity
and justice that there is a clear and compelling public
policy against it").  The Vermont Supreme Court has not
yet recognized an exception to at-will employment for
retaliation against whistleblowers, but this Court has.
<u>See</u> <u>Burt v. Standard Register Co.</u>, No. 90-295, slip op.
at 5 (D. Vt June 19, 1992) (Coffrin, J.).  Therefore, I
recommend that Defendants' motion be denied as to this
claim.

    D.    **<u>Plaintiff's Motion for Partial Summary Judgment</u>**

Finally, Plaintiff has filed a motion for partial
summary judgment on the question of liability.  He
argues that Defendants have conceded that the anonymous
letter Plaintiff wrote was the underlying reason for his

AO 72A
(Rev.8/82)

discharge, and that the letter was clearly protected activity under both the FCA and the First Amendment. He argues, therefore, that there is no remaining question of fact as to Defendants' liability for wrongful discharge under the FCA, § 1983 or Vermont law.

As already discussed, Defendants have submitted evidence that Plaintiff's discharge stemmed from the reasonable belief that the anonymous nature of the letter and the false statements regarding the internal grievances therein would cause disruption within the Department, and therefore Plaintiff's letter fails the Pickering balancing test. In addition, a sufficient fact question remains as to the nexus between Plaintiff's discharge and any protected activity under the FCA or Vermont public policy. Plaintiff's motion should therefore be denied.

### Conclusion

For the foregoing reasons, I recommend that Defendants' Motion for Summary Judgment on the Merits For All Defendants as to all Claims (Paper 23) be

36

GRANTED in Part and DENIED in part; Defendants' Motion

for Summary Judgment Based on Official Immunity for

Individual Defendants as to All Claims (Paper 25) be

GRANTED; Defendants' Motion for Summary Judgment as to

the Release of All Claims (Paper 27) be DENIED; and

Plaintiff's Motion for Partial Summary Judgment (Paper

29) be DENIED.

Dated at Burlington, in the District of Vermont, this
7th day of April, 2003.

Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation
within 10 days after service by filing with the clerk of
the court and serving on the magistrate judge and all
parties, written objections which shall specifically
identify the portions of the proposed findings,
recommendations or report to which objection is made and
the basis for such objections.  Failure to file
objections within the specified time waives the right to
appeal the District Court's order.  See Local Rules
72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.
72(b), 6(a) and 6(e).

AO 72A
(Rev.8/82)